BROWN and another, Respondents, vs. DUNN, imp., Appellant.

*March 31—April 17, 1908.*

*Boundaries: Meandered waters: Natural monument: Quieting title: Possession: Sufficiency of evidence.*

1. Where by the original survey and government plat a tract of land is bounded by a body of water, such body of water is a natural monument and will constitute the boundary, however distant or variant from the position indicated for it by the meander line, and hence will control as a call of the survey over either distances or quantity, except where the body of water is so remote that it cannot in reason be supposed that the plat indicates a purpose to make it the boundary of the premises.

2. Where plaintiff claimed the shore of a lake as his boundary and the contour of the lake shore was in general similar to that of the meander line and no other lands were surveyed which even by a projection of their lines to the lake shore could interfere with the projection of plaintiff's lines, *held*, that the shore of the lake, although considerably remote from the meander line, was to be taken as the boundary, and neither fraud in the survey nor gross mistake in the location of the lake was to be assumed so as to force the conclusion that the government did not, under the rule stated, intend to convey to the lake shore.

3. The rule that where a meander line is drawn on one side of the regular survey lines the boundaries of land within such meander line cannot be extended across such survey lines in order

to reach the water front, especially when the survey line appeared upon the government plats as a boundary of another lot or subdivision conveyed to some one else, has no application where the meander line frequently crosses the survey line, thus conclusively refuting the inference that the government intended that the lot line should be confined within the survey lines.

4. In an action to quiet title it appeared that plaintiff resided for many years upon the land claimed as a part of his premises, cultivated part of it, and exercised such dominion over the whole as was reasonably consistent with the character of the land. Defendant, a landowner on the opposite side of a narrow lake, undertook to survey and plat a portion of the land not cultivated by plaintiff, along the lake shore, and made such entry as was necessary to accomplish this. *Held*, that the evidence warranted the finding of the trial court that the plaintiff was in possession claiming title and that the acts of defendant were in the nature of temporary trespasses and did not interrupt such possession.

APPEAL from a judgment of the circuit court for Florence county: JOHN GOODLAND, Circuit Judge. *Affirmed*.

Action under sec. 3186, Stats. (1898), to quiet title to lot 9 in fractional section 32, township 40 north, and range 19 east, in Florence county, bounded on the northeast by a lake. The plaintiffs' title to said lot 9, by mesne conveyances from the government patent, is conceded, the controversy being whether the parcel of land, which is in the northeast portion of the tract claimed, and on the shore of the lake, is a part of said lot. By the government plat no land is shown south of the lake in the southeast quarter of section 32 except lot 9, which lies in the southeast corner thereof, and is bounded on the south by the section line and on the west by the middle line of the section, each of said sides appearing upon plat to slightly exceed eighty rods in length. The other boundaries of the lot are a curved line, nearly a segment of a circle, indicating a boundary on the lake. The south shore of the lake as it now exists is so far northeast of the meander line as to leave a nearly circular strip between the two of

sixty rods or more in width, so that the shore of the lake lies
partly to the east of the east line of the section and partly
to the north of the east and west quarter line, and goes di-
agonally across what would have been the northeast quarter

## S.E.$\frac{1}{4}$, SEC. 32  T. 40 N. R. 19 E.
### IN 1907.

of the southeast quarter of the section. No one-sixteenth
lines were drawn upon the government plat within this
quarter-section, but the meander line would not have ex-
tended at all into the northeast quarter of the southeast
quarter, and would have extended plaintiffs' lot into both the
northwest of the southeast and the southeast of the southeast.
Defendants' only title is to a parcel of land designated as lot
1 in the same section and shown by the government plat to

have been in the northeast corner of the southeast quarter of 32, and bounded on the south and west by the northerly and easterly bank of the lake. The court held that lot 9 included the land in controversy, by virtue of the rule that its northerly and easterly boundaries were the lake and not the meander line, and held that the land in dispute upon which defendant *Maggie A. Dunn* asserted certain claims was a part of the plaintiffs' premises. It was also held that plaintiffs were in possession thereof, and that defendants' acts were mere temporary trespasses and did not constitute possession. Accordingly judgment was entered quieting the plaintiffs' title and excluding the defendants, from which judgment defendant *Maggie A. Dunn* appeals.

*W. B. Quinlan,* for the appellant.

For the respondents there was a brief by *A. W. Shelton* and *Max Sells,* and oral argument by *Mr. Shelton.*

DODGE, J. It is established as a general rule of law, both in our own court and in the courts of the United States, that where by the original survey and government plat a tract of land appears to have as its boundary a body of water, such body of water is a natural monument and will constitute the boundary, however distant or variant from the position indicated for it by the meander line, and hence will control as a call of the survey over either distances or quantity of land designated in the conveyance or on the government plat. *Railroad Co. v. Schurmeier,* 7 Wall. 272; *Mitchell v. Smale,* 140 U. S. 406, 414, 11 Sup. Ct. 819; *Shufeldt v. Spaulding,* 37 Wis. 662; *Lyon v. Fairbank,* 79 Wis. 455, 48 N. W. 492. This rule is subject to some exceptions, as where the lake or body of water is so remote from the premises that it cannot in reason be supposed that the plat indicates a purpose to make it the boundary of the premises; but such exception can have no restrictive effect to the present case, where the contour of the lake shore is so nearly similar

to that shown by the meander line, and where no other lands are surveyed or conveyed by the United States which, even by projection of their lines to the lake shore, can interfere with the projection of plaintiffs' lines. Nor can we, as courts have done in some cases, assume either fraud in the survey or so gross a mistake in the location of the lake as to force the conclusion that the United States government did not, under the rule above stated, intend to convey to its shore, for the reason that no such body of water as indicated existed to serve as a natural monument or boundary. See *Security L. & E. Co. v. Burns,* 87 Minn. 97, 91 N. W. 304; *Grant v. Hemphill,* 92 Iowa, 218, 223, 59 N. W. 263, 60 N. W. 618.

Another limitation or modification of the absolutism of the rule above stated, urged upon us by the appellant, has been recognized and applied to the effect that where the meander line is drawn on one side of one of the regular survey lines, either section line, one-quarter line, or one-sixteenth line, the boundaries cannot be extended across such line in order to reach the water front, especially when such survey line appeared upon the government plats as a boundary of another lot or subdivision conveyed to some one else. *Whitney v. Detroit L. Co.* 78 Wis. 240, 47 N. W. 425; *Lally v. Rossman,* 82 Wis. 147, 51 N. W. 1132; *Underwood v. Smith,* 109 Wis. 334, 85 N. W. 384. Such limitation cannot have application to the present situation, for the reason that, while in some places the meander line falls south of the east and west one-sixteenth line and west of the north and south one-sixteenth line, yet at other points it confessedly is located north of the one and east of the other, thus conclusively refuting the inference that the government intended that the lot line should be confined within either of said one-sixteenth lines. True, in running the boundary of said lot according to the present condition of the shore the surveyor must pass from the south to the north side of the

line equidistant between the north and south lines of the quarter-section, but the government plat makes perfectly obvious that the government surveyor did this very thing, for he included within lot 9 land lying north of that one-sixteenth line. True, he crossed it at a different place, but none the less to the effect of declaring the intent that the lot was not confined by any such line, but was intended to extend to the water front notwithstanding it. So, also, with reference to the north and south one-sixteenth line.

2. The right of plaintiffs to maintain this action is assailed upon the contention that plaintiffs were not, and defendants were, in possession of the immediate ground in dispute. This is claimed to appear both by the complaint, which was met by demurrer, and by the evidence. The complaint as finally amended did, however, categorically allege that plaintiffs owned and were in actual possession of the land claimed and that the defendants had from time to time entered thereon and cut trees; so that obviously the demurrer, so far as it raised that objection, was properly overruled. The plaintiffs' evidence tended to show that one of the plaintiffs had for many years resided upon the land claimed as a part of lot 9 in a dwelling house which he had built thereon and that he had cultivated parts of it, and that, while the immediate lake shore where defendants' acts were committed had not been cultivated, it had been treated like other parts of such land by the exercise of apparent dominion over it such as was reasonably consistent with the character of the land. The only acts claimed to show possession in any one else were those of the defendants in undertaking to survey and plat into building lots a strip near the lake, and the entry upon the land so far as was necessary to run the lines, drive stakes, and to cut brush to enable such acts; the defendants at all times occupying their lot 1 in the very northeast corner of the southeast quarter of section 32 on the other side of the lake, which was quite narrow at the point in question. In

view of this evidence we are persuaded that the findings of the court are fully sustained to the effect that the plaintiffs were in possession claiming title and that the acts of the defendants were in the nature of temporary trespasses and did not interrupt such possession.

We therefore conclude that the judgment awarding to plaintiffs all of the premises south and west of the lake which fall within the exterior boundaries of the southeast quarter of section 32 was correct.

*By the Court.*—Judgment affirmed.